Lore A. ROGERS, an Individual and, Huron Valley Sunrise Lions Club, a Non-Profit Michigan Corporation, Plaintiffs,

v.

The INTERNATIONAL ASSOCIATION OF LIONS CLUBS, a Non-Profit Illinois Corporation, Defendant.

Civ. A. No. 86CV60117–AA.

United States District Court, E.D. Michigan, S.D.

June 10, 1986.

L. Ray Bishop, Donald E. Shelton, Bishop & Shelton, P.C., Ann Arbor, Mich., for plaintiffs.

Jerold D.E. Lax, Miriam E. Meier, Harris Lax Guenzel & Dew, P.C., E. Edward Hood, Dykema Gossett Spencer Goodnow & Trigg, Ann Arbor, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This matter comes before the court on the plaintiffs' motion for a preliminary injunction. For the reasons stated below, the court grants the motion for a preliminary injunction.

This dispute arises out of the plaintiff Sunrise Lions Club's (Sunrise) admission of plaintiff Lore A. Rogers (Rogers) as a member in violation of the Constitution and Bylaws of the defendant International Association of Lions Clubs (International). The violation of the International's rules lead it to revoke Sunrise's charter as a Lions club and to refuse Lions' membership to Rogers. The behavior which lead to the International's taking this drastic action of terminating an entire club's membership

can be simply stated; Sunrise admitted a woman, Rogers, to Lions' membership.

Plaintiffs challenge the International's policies of refusing to admit women, claiming they amount to sex discrimination under the Elliott-Larsen Civil Rights Act (Elliott-Larsen Act) Mich.Comp.Laws Ann. §§ 37.2101 *et seq.* Defendant responds that its actions are not forbidden by the Elliott-Larsen Act for two reasons: 1) it did not deny equal utilization of public accommodations or public service because of sex and 2) it is a private club exempt from the Act.

■ As a preliminary matter, the court must address the defendant's motion raised at oral argument, that Sunrise lacks standing to sue under the Elliott-Larsen Act because it is a corporate entity. Defendant relies upon the language of Mich.Comp. Laws Ann. § 37.2302, which states that "a person shall not ... [d]eny an individual" the rights guaranteed under the statute. Defendant construes this language to mean that only individuals have standing to sue for violations of the Elliott-Larsen Act. The court disagrees.

The remedies section of the Act, Mich. Comp.Laws Ann. § 37.2801, provides that: "A person alleging a violation of this act may bring a civil action for appropriate injunctive relief ..." The word "person" is defined in Mich.Comp.Laws Ann. § 37.-2103(f) to include corporations and "any other legal or commercial entity." It is clear that Sunrise would qualify as a person under this language.

Plaintiff Rogers is an individual who is alleged to have been discriminated against by the defendant. The denial of plaintiff Rogers' rights under the statute has caused harm to plaintiff Sunrise, too. The denial of Rogers' rights is the discrimination that started the events leading to the harm of plaintiff Sunrise. This court holds that Sunrise, a "person" under the Act, can bring an action under the Elliott-Larsen Act but it must show there was a violation of individual plaintiff Rogers' rights which was related to the harm it suffered.

The standard for granting a preliminary injunction has been stated by this court in

*Pascoe v. I.R.S.,* 580 F.Supp. 649, 651 (E.D. Mich.1984), *aff'd mem.,* 755 F.2d 932 (6th Cir.1985). The party seeking injunctive relief must demonstrate that:

... (1) that there is a substantial likelihood that he will prevail on the merits; (2) that failure of the Court to grant the requested relief will result in irreparable injury (also described as a showing that the party seeking relief is without an adequate remedy at law); (3) that the balance of hardships, taking into account the hardship that will result to the party seeking relief if relief is denied, and the hardship that will result to the party opposing the relief if relief is granted, tips decidedly in favor of the party seeking relief; and (4) that public policy militates in favor of granting the requested relief ...

*Id.* at 651.

*Likelihood of Success on the Merits*

■ The first requirement the plaintiffs must establish to obtain a preliminary injunction is a likelihood of success on the merits. In this case, plaintiffs' likelihood of success rests on their ability to fall within the statutory provisions of the Elliott-Larsen Act. The pertinent sections are Mich.Comp.Laws Ann. §§ 37.2301, 2302. The relevant portions of section 2302, the operational section of the public accommodations act, provide that:

... [A] person shall not ... [d]eny an individual the full and equal enjoyment of ... services, facilities, privileges, advantages or accommodations of a place of public accommodation or public service because of ... sex ...

Mich.Comp.Laws Ann. § 37.2302.

Place of public accommodation and public service are defined in section 2301 as follows:

(a) "Place of public accommodation" means a[n] ... institution of any kind ... whose ... services, facilities, privileges, advantages, or accommodations are ... made available to the public.

(b) "Public service" means ... a tax exempt private agency established to provide service to the public.

Mich.Comp.Laws Ann. § 37.2301.

The court finds the Lions clubs fall under the definitions of both a place of public accommodation and a public service. Sunrise is a place of public accommodation because its meetings are in a public place and are open to the public. Plaintiff Sunrise holds its breakfast meetings at a local restaurant, Howard Johnson's, which is open to the public. Meetings are open to members, guests, visiting Lions, and strangers. Moreover, Sunrise's services, the volunteer efforts of its members, are made available to the public.

Lions clubs are also, in the words of the International's general counsel Joseph Stone, "tax exempt private agencies established to provide service to the public." It is undisputed that the Lions clubs in this case are nonprofit corporations, i.e., tax exempt agencies. There is also no question that the whole purpose of the Lions' organization is to provide volunteer public services through its members. The International provides services to the local clubs so that they can, in turn, serve the public. The court finds this is sufficient to establish that the Lions' clubs are public services.

▮ Defendant next argues that even if it falls within the literal language of section 2302, it is exempted from its prohibitions by virtue of the private club exemption. Mich.Comp.Laws Ann. § 37.2303. This statute provides that:

This article shall not apply to a private club ... not in fact open to the public....

This statutory provision has not been interpreted by the Michigan courts. However, the United States Supreme Court has given some guidance as to what factors should be considered in deciding when a club is private. *Roberts v. United States Jaycees*, 468 U.S. 609, ——, 104 S.Ct. 3244, 3254–58, 82 L.Ed.2d 462 (1984), citing *Nesmith v. Young Men's Christian Ass'n*, 397 F.2d 96 (4th Cir.1968), and *National Organization for Women v. Little League Baseball, Inc.*, 127 N.J.Super. 522, 318 A.2d 33, *aff'd mem.*, 67 N.J. 320, 338 A.2d 198 (1974). These factors include the organization's size, selectivity, public services offered, and use of public facilities. *See also, Kiwanis International v. Ridgewood Kiwanis Club*, 627 F.Supp. 1381, 1388 (D.N.J. 1986) and *Lloyd Lions Club of Portland, Oregon v. International Ass'n of Lions Clubs*, No. A8206–03941, slip op. at 11–12 (Circuit Court, County of Multnomah, Oregon, April 10, 1985).

From the testimony presented at the oral hearing, it is apparent that the size of the local and International Lions clubs is essentially unlimited. Membership in the International Lions clubs totals over 1,350,000. More than 37,000 local clubs are in existence. Defendant International stresses the importance of recruiting new members to Lionism. It provides awards to be given to the local clubs in recognition of successful recruitment of new members. Defendant sponsors official membership growth programs and encourages individual clubs to sponsor membership contests. Nowhere does it appear that the Lions would turn away potential members for fear of getting too large. Testimony was presented that if any one local grew larger than it wanted to be, members could split off and form a new local club. The court finds the Lions are potentially unlimited in size.

There is a formal procedure for screening applicants to the Lions clubs but it is cursory and operates to allow vast numbers of members. The formal admission criteria states that "[a]ny male person of legal majority and of good moral character and good reputation in his community may be granted membership." Lions Const. Art. III, § 8. The application process is supposed to follow several steps. New members are to be sponsored by current Lions club members. They are required to complete application forms. The local club is then supposed to "thoroughly investigate the background of all persons proposed for membership in the club." Lions Const., Art. XI, § 1(h). After "investigation," the local membership chairman submits the application to the local board of directors of

the club. If approved by a majority of the board, the applicant is then invited to join the local club.

While it is true that this application procedure has the appearance of being elaborate, formal, and structured, in reality, it is not selective and almost all men who apply to the Lions clubs are admitted to membership. Plaintiff Sunrise does not follow any formal procedure for screening potential members. It does not inquire into applicants' background and takes no steps to investigate the moral, financial, or any other aspect of the character of potential members. The same is also true for the local Ann Arbor Evening Lions Club. Moreover, testimony showed that neither of these two clubs has turned down an applicant for membership within the past eighteen years.

Plaintiff Sunrise advertises in the local newspaper for new members. Although the International claims it forbids this type of advertising, it has no written documentation of this claim and did not inform plaintiff Sunrise of this policy.

Sunrise also solicits businesses to supply new members by sending them letters inquiring about potential applicants. Numerous letters of this type were introduced into evidence. Moreover, the International gives constant encouragement to the local's efforts to solicit and recruit new members. Membership "kits" are provided to assist in the process. There are constant recruiting drives to add new members.

The essence of privacy is selectivity. If there is little or no selectivity, there is no basis to claim privacy. *Nesmith v. Young Men's Christian Ass'n,* 397 F.2d at 102; *United States Jaycees v. McClure,* 305 N.W.2d 764, 770 (Minn.1981). The court finds that the defendant International and the local clubs engage in intensive and continuous recruitment of new members, give rewards and prizes for recruiting numbers of new members, advertise and solicit new members, and admit virtually all applicants who meet minimal standards for membership. The court concludes that the Lions clubs are not selective in fact.

The goal of the Lions clubs can be broadly stated to be the provision of public services. The locals are active in numerous community and humanitarian services. Some examples include sight conservation and work with the blind, aid to hearing and speech impaired persons, health services, citizenship programs, assistance to Boy Scouts, Girl Scouts and other youth groups. Defendant International encourages individual clubs to participate in these types of activities, as well as other public service programs. Furthermore, there are undoubtedly private benefits to its members, such as, acquisition of leadership skills and useful business contacts. Thus, another service which the Lions' clubs offers to the public is membership. The court finds that the Lions clubs are public in terms of the services they provide to others and to their members.

The last factor to be examined is the organization's use of public facilities. All of Sunrise's membership meetings are held in a Howard Johnson's restaurant. This restaurant is open to the public and members of the general public are welcome to, and occasionally do, attend the Sunrise Club's meetings. Moreover, all of the Sunrise Club's public service events and fundraisers are held in public places. The other local Lions organizations in Ann Arbor also provide public services in public places, such as, the Sightmobile at the Ann Arbor Art Fair. The court finds this evidence sufficient to establish that the Lions use public facilities for a substantial portion, if not all, of their activities. Sunrise Club has no property from which the public is excluded.

In short, the court finds that while the Lions are a club, they are a public club. They have vast numbers of members, who are selected with only perfunctory scrutiny. They are dedicated to public service and offer it in public places. They operate for the benefit of the public, and do indeed provide great benefits.

■ This type of club is not covered by the statutory exemption in Mich.Comp. Laws Ann. § 37.2303. The court finds that

public clubs do not have to include everybody but that a club is not private just because it may (potentially) exclude some people or require members to pay dues to belong. The statutory exemption was designed to apply to clubs "not in fact open to the public." Under the tests applied above, it is apparent that the minimal selectivity used by the Lions cannot offset the other indices of "publicness" which their clubs exhibit. "If nearly everyone who qualified for membership is accepted, the club may not be considered private." *United States Power Squadrons v. State Human Rights Appeal Bd.*, 445 N.Y.S.2d, 565, 573, 84 A.D.2d 318 (App.Div.1981), *aff'd*, 59 N.Y.2d, 401, 465 N.Y.S.2d 871, 452 N.E.2d 1199 (1983).

Accordingly, this court holds that the plaintiffs have exhibited a substantial likelihood of success on the merits and satisfy the first element of the requirements for a preliminary injunction.

*Irreparable Harm*

The court finds that the plaintiffs have demonstrated that irreparable injury will occur to individual plaintiff Rogers and to the Sunrise Club and its members if preliminary injunctive relief, reinstating the charter of the club, is not granted. For individual plaintiff Rogers, the termination of the Sunrise Club's charter, and her subsequent loss of membership in it, constitute losses that cannot be compensated by money damages. She will suffer the loss of opportunity to participate in Lions' activities with the club which admitted her to membership plus the loss of valuable business contacts and benefits. Furthermore, she will be deprived of this opportunity to further develop her leadership skills.

Sunrise Club and its members will also suffer irreparable harm from the loss of their charter. The club has already lost its liability insurance because of the International's revocation of the charter. Attendance at weekly meetings has declined dramatically since the revocation of the charter and at least two members have resigned. With its charter revoked, Sunrise is unable to recruit or retain new members. Recruiting new members is essential for

the club to maintain its continued existence and to operate as a local Lions club.

Individual members of the Sunrise Club will be harmed by the charter's revocation, too. Sunrise is the only Lions club which meets in the morning in the Washtenaw County area. Many of the current Sunrise Club members will be unable to attend other Lions' clubs since they are unable to meet at the times those clubs meet. Unless the charter is reinstated at least two members of the Sunrise Club could lose their distinction of having 15 or more years of continuous active service. This would mean they would lose awards and special privileges of membership. These plaintiffs will have to transfer to other Lions clubs shortly if the preliminary injunction is not granted.

Finally, plaintiff Sunrise Club no longer receives information on conventions and its members are unable to attend or participate in these events. Neither does the club receive the Lions magazine and it can no longer purchase merchandise from the International. Sunrise has been forced to abandon its fundraising activities and will be unable to resume them until its charter is restored.

On the basis of these demonstrated harms, the court's failure to grant the requested relief will result in irreparable injury to the plaintiffs. Since the plaintiffs are without an adequate remedy at law, this element of the requirements for a preliminary injunction has been satisfied.

*Balance of Hardship*

The balance of hardships resulting from the denial of relief to the plaintiffs decidedly outweighs the hardship, if any, that will result to the defendant International if the preliminary injunction is granted. The court finds there will be no significant harm to the International from having a club that has to comply with local law as to its membership practices. Defendant's concern that the local clubs will be able to "thumb their noses" at it is unfounded. If Michigan law requires that local Lions clubs admit women who meet the (limited) membership criteria of the Lions, then the

local clubs can hardly be claimed to have irreverently treated the International. The general counsel for the defendant admitted that if Michigan law required its clubs to allow women to be members, then it would operate with dual systems of memberships—men only in other states and both men and women in Michigan. The court concludes that the harms for Sunrise Club and its members, including plaintiff Rogers, far outweigh the incidental harms to the International.

*Public Policy*

Finally, the court believes it very clear that public policy militates in favor of granting the requested relief in this motion. In Michigan, it has been the express policy of the legislature and the courts to provide a society that operates to the fullest extent possible without discrimination on the basis of sex. This policy is stated in the Elliott-Larsen Act and elsewhere. Mich.Comp.Laws Ann. §§ 37.2101 *et seq.* To allow the International Lions to continue to discriminate against women, and to force their local clubs to discriminate against women by the threat of the revocation of their charters, is a gross violation of this policy and should not be allowed to continue.

*Relief Ordered*

For the reasons stated above, the court holds that all four requirements for granting a preliminary injunction have been met in this case. It is ordered that a preliminary injunction be granted to the plaintiffs directing the defendant International to immediately restore the charter of the Sunrise club as of October 21, 1985, *nunc pro tunc.*

SO ORDERED.