**COMMUNITIES FOR EQUITY, on behalf of itself, its members, and all those similarly situated; Diane Madsen, on behalf of her minor daughters and all those similarly situated; Jay Roberts–Eveland, on behalf of her minor daughter and all those similarly situated, Plaintiff,**

v.

**MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, on behalf of itself and its members; John "Jack" Roberts; Keith Alto; Geraldine David; Keith Eldred; Paul Ellinger; Eric Federico; Dan Flynn; Margra Grillo; Robert Grimes; Eunice Moore; Norm Johnson; Dewayne Jones; Dennis Kniola; William Newkirk; Thomas Rashid; Robert Riemersma; Randy Salisbury; Joyce Seals; Michael Shibler; Christi Brilinski; and Does 1 to 50, Defendants.**

No. 1:98 CV 479.

United States District Court, W.D. Michigan.

Nov. 16, 1998.

H. Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, Marcia D. Greenberger, The National Women's Law Center, Washington, DC, Kristen Galles, Equity Legal, Alexandria, VA, Neena Chaudhry, National Women's Law Center, Washington, DC, for Communities for Equity, Diane Madsen, Jay Roberts–Eveland.

Edmund J. Sikorski, Ann Arbor, MI, for Michigan High School Athletic Association.

William M. Azkoul, Azkoul & Azkoul, Grand Rapids, MI, for John "Jack" Roberts, Keith Alto, Geraldine David, Paul Ellinger, Eric Federico, Dan Flynn, Margra Grillo, Robert Grimes, Tammy Jackson, Norm Johnson, Dewayne Jones, Dennis Kniola, William Newkirk, Thomas Rashid, Robert Riemersma, Randy Salisbury, Joyce Seals, Michael Shibler, Eunice Moore.

## ORDER

ENSLEN, Chief Judge.

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that Defendants' Motion for More Definite Statement or to Strike Pursuant to FRCP 12(e) (dkt.# 12) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant MHSAA's Motion for Summary Judgment Pursuant to FRCP 56(c) as to First and Second Claim of Plaintiffs and Motion Pursuant to FRCP 12(b)(6) as to Plaintiffs' Third Claim for Relief (dkt.# 14) is **DENIED** without prejudice, and may be renewed upon completion of discovery;

**IT IS FURTHER ORDERED** that individual Defendants' Motion for Summary Judgment Pursuant to FRCP 56(c) and to dismiss Pursuant to FRCP 12(b)(6) (dkt # 17) is **GRANTED** as to Title IX claims brought against individual Defendants in their individual capacities, which are **DISMISSED**, and **DENIED** in all other respects, without prejudice, and may be renewed upon the completion of discovery;

**IT IS FURTHER ORDERED** that Defendants' Suggestion of Incapacity (dkt.# 15) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss and for Summary Judgment for lack of standing (dkt.# 18) is **GRANTED** as to Plaintiff Communities for Equity, which is **DISMISSED** as a party to

this suit, and **DENIED** as to Plaintiffs Madsen and Roberts–Eveland;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion Under FRCP 56(f) to Conduct Discovery Before Having to Respond to Defendants' Motions for Summary Judgment (dkt.# 30) is **GRANTED;**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiffs' Affidavits (dkt.# 37) is **DENIED** as moot.

## OPINION

This matter is before the Court on (a) the Michigan High School Athletic Association's ("MHSAA") (1) Suggestion of Incapacity; (2) Motion for Summary Judgment as to Plaintiffs' First and Second Claims for Relief; (3) Motion to Dismiss as to Plaintiffs' Third Claim for Relief; (b) the individual Defendants' Motion for Summary Judgment as to Plaintiffs' First and Second Claims for Relief and Motion to Dismiss Plaintiffs' Third, Fourth and Fifth Claims for Relief; and (c) joint motions by MHSAA and the individual Defendants (1) to dismiss claims of Plaintiffs Madsen and Roberts–Eveland for lack of standing; (2) for summary judgment on the standing of Communities for Equity; and (3) for more definite statement or to strike under Fed.R.Civ.P. 12(e). After submitting responses to the above motions, Plaintiffs also submitted a Motion under Fed.R.Civ.P. 56(f) to Conduct Discovery Before Having to Respond.

## I. LEGAL STANDARDS

### Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir.1998).

### Federal Rule of Civil Procedure 56(c)

"Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *City Management Corp. v. U.S. Chemical Co.*, 43 F.3d 244, 250 (6th Cir.1994). "A party seeking summary judgment bears the initial burdens of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Under this test, the moving party may discharge its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). "Once this initial burden is met, it becomes the burden of the non-moving party to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Mere conclusory assertions or speculation will not suffice to avoid summary judgment, however. *Moore v. Philip Morris Cos.*, 8 F.3d 335, 343 (6th Cir.1993). The non-moving party must go beyond the pleadings and provide sufficient facts to establish the dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Fed.R.Civ.Pro. 56(e)).

"'[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge. The evidence of the non-movant

is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.'" *Id.* (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. This Court "cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir. 1982).

## II. STANDING

■ Defendants contend that Plaintiffs Madsen, Roberts–Eveland, and Communities for Equity ("CFE") lack standing to bring this action. They first raise a technical issue, contending that because Madsen and Roberts–Eveland are not designated as "next friends" or "guardians ad litem" for their minor children, they cannot sue on their behalf. This contention is defeated by Federal Rule of Civil Procedure 17(c), however, which provides that a general guardian may sue on behalf of a minor. A parent is a guardian who may so sue. *See, e.g., Croce v. Bromley Corp.,* 623 F.2d 1084, 1093 (5th Cir.1980).[1]

■ Defendants then challenge the constitutional standing of named Plaintiffs and CFE, the former under Fed.R.Civ.P. 12(b)(6), the latter under Fed.R.Civ.P. 56(c). The jurisdiction of Article III courts is limited to "cases" and "controversies." *See Allen v. Wright* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). One prerequisite to the existence of a case or controversy is that a party bringing suit must have standing to bring it. *Id.* The Supreme Court has enu-

merated three constitutional requirements to a finding of standing: "[a] plaintiff must allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *Id.* at 751, 104 S.Ct. 3315.

### a. Injury

■ Of particular importance in the standing calculus is the requirement that an injury be personal. *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). A plaintiff, generally, may not be a proxy prosecuting the rights of another. *See, e.g., Ad Hoc Committee of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.,* 873 F.2d 25, 28 (2nd Cir.1989). Accordingly, Plaintiffs must allege both that the minor children of Madsen and Roberts–Eveland have suffered or will suffer an injury; and that members of CFE have suffered or will suffer an injury.

### i. Individual Plaintiffs [2]

■ In order to demonstrate an injury, Plaintiffs must allege that they have sustained or are in danger of imminently sustaining a "direct injury" that is "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Plaintiffs here allege injuries at various levels of abstraction. At its most general, the injury suffered is gender discrimination. At a more specific level, the injury may be described as a denial of equal participation, treatment, and benefits. Finally, at its most specific, Plaintiffs' injuries include those contained in their Amended Complaint at paragraphs 6 and 7.[3] As to the individual

---

1. This conclusion also resolves Defendants' Suggestion of Incapacity.

2. In this subsection, "Plaintiffs" refers primarily to the minor children of the named Plaintiffs, on whose behalf named Plaintiffs sue.

3. These include, at paragraph 6, refusing to sanction girls ice hockey and water polo. At paragraph 7, they include: (1) requiring that the Plaintiff Class play its sports in non-traditional seasons; (2) operating shorter athletic seasons for some girls' sports that for boys' sports; (3)

scheduling the competitions of the Plaintiff Class on inferior dates; (4) providing, assigning, and operating inferior athletic facilities to the Plaintiff Class in which to play MHSAA-sanctioned games; (5) requiring that the Plaintiff Class play some sports under rules and/or conditions different from those in the NCAA or other governing organizations, unlike boys; (6) allocating more resources to the support and promotion of male interscholastic athletic programs than of female programs. While these are sufficient to survive a motion to dismiss, query whether this degree of specificity will ultimately suffice in light of *Lewis*

Plaintiffs, the Amended Complaint appears to allege cognizable personal injuries at all levels of abstraction.

■ At their most specific, and most clear, the injuries suffered are contained in the allegations of unequal treatment contained at paragraphs 6 and 7 of the Amended Complaint. These specific injuries are alleged to have been suffered by "the Plaintiff Class," which, at paragraph 1, is said to include the individual Plaintiffs and CFE. A small inferential step leads to the allegation that the individual Plaintiffs have suffered from the harms enumerated at paragraphs 6 and 7.

■ The existence of an injury is also made apparent in Plaintiffs' more general allegation, derived from the specific ones above, that they have been excluded from opportunities to participate in interscholastic athletic programs and have received unequal treatment and benefits in these programs. (Amended Complaint at paragraph 43.) In *Comm. of Concerned Teachers*, the Second Circuit found injury to the plaintiffs' "right to a school environment free from the effects of racially discriminatory practices." 873 F.2d at 28. A similar right was recognized by Judge (now Justice) Ginsburg in *Women's Equity Action League v. Cavazos*, 879 F.2d 880, 885 (D.C.Cir.1989) ("The district court recognized that the plaintiffs here asserted 'not an abstract or generalized grievance,' but a right, currently denied them, to be educated 'in an environment ... free from discrimination.' "). Plaintiffs have adequately alleged injuries to their interest, as student-athletes, in the freedom from discrimination guaranteed by Title IX and the Constitution.

■ Plaintiffs also note, in their opposition to Defendants' Motion to Dismiss, that they have suffered a "stigmatic" injury, causing them "to believe that they are second class citizens." (Opposition at 7.) The Supreme Court has recognized the viability of such an injury, *Heckler v. Mathews*, 465 U.S. 728, 739, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984), but has qualified it, limiting its availability to "those persons who are personally denied equal treatment." *Id. See also Allen v. Wright*, 468 U.S. 737, 755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). As noted by the Court in *Allen*, to do otherwise would extend standing "to all members of the particular ... groups against which the [defendant] was alleged to be discriminating." 468 U.S. at 756, 104 S.Ct. 3315. Plaintiffs here have alleged personal denial of equal treatment.

### ii. Communities for Equity

■ The standard under which standing is examined is different, however, when challenged under Fed.R.Civ.P. 56, as is CFE's standing. Here, allegations are insufficient, and CFE is put to its proof. To demonstrate standing, it must adduce specific facts showing that one or more of its members has been directly affected. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ An organization can sue based on the injuries of its members.[4] The affidavit provided by Madsen establishes that she is a member and that "female students" are members. Her membership would be sufficient to establish associational standing for CFE if she were an injured member, on whose behalf CFE sued. The actual injury-sufferers in this case, however, are the students, not the parents who sue on their behalf. Plaintiff Madsen's affidavit does not establish the membership in CFE of any *specific* female student who has suffered a *specific* injury. There is nothing in Plaintiff Madsen's affidavit leading to a conclusion that one of her daughters, for instance, is a member. While a mother may sue on behalf of a daughter, this does not lead to a conclusion that an organization to which the mother

v. *Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

4. "Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In order to demonstrate standing, an association "must allege that its members, or any one of them," has suffered an injury. *Seldin*, 422 U.S. at 511, 95 S.Ct. 2197.

As noted by Plaintiffs, it is premature to address any issues regarding the certification of a class of plaintiffs in this action.

belongs can sue on behalf of the daughter. To make injuries so easily distributive would deprive standing law of its foundation. Accordingly, CFE has failed to show with specificity that a member has suffered an injury, and summary judgment as to its standing must be granted.[5]

### b. Causation and Redressability

 Defendants assert that "[a]ny alleged injuries cannot be traced to Defendants because Michigan school districts control and regulate interscholastic athletics" and cite an opinion of the Michigan Attorney General to that effect. At the dismissal stage, however, the Plaintiffs allegations are taken as true, and Plaintiffs allege that Defendants are, at least, *de facto* regulators of high school athletics in Michigan. Correspondingly, if Defendants are the actual regulators of high school athletics in Michigan, Plaintiffs allege that changes in their policies will effect changes at the high school level, producing Plaintiffs' desired result of equal treatment. The causation and redressability requirements of *Allen* are thus also met.

### III. TITLE IX

#### a. Receipt of Federal Financial Assistance

 In support of its contention that MHSAA is not a recipient of federal financial

assistance, Defendants lay out a non-exhaustive list of sources from which it *does not* receive funding.[6] Plaintiffs, in turn, list sources from which they believe MHSAA *does* receive funding. Without determining if, on the materials presented, there remains a genuine issue of material fact, the Court concludes that the appropriate interim resolution of this question is to grant Plaintiffs' Motion under FRCP 56(f) to Conduct Discovery Before Having to Respond to Defendants' Motions for Summary Judgment. The Court so concludes because, although Plaintiffs have reason to believe that the MHSAA: (1) receives categories of funding which could bring it within the ambit of Title IX and/or (2) is an agent of its member schools, they have not had an adequate opportunity, under the discovery provisions of the Federal Rules of Civil Procedure, to inquire into the facts supporting or refuting the claim. When discovery is complete, a further motion for summary judgment may be appropriate.[7]

#### b. Individual/Official Capacity Liability

Individual Defendants contend that they cannot be sued in their individual capacities under Title IX. Plaintiffs, on the other hand, argue for individual liability in a Title IX suit by distinguishing the word "by" from the word "under," as used in 20 U.S.C. § 1681(a). The contention is that since the

---

**5.** Plaintiffs' request for further discovery is not pertinent here. Information as to its membership is within CFE's control.

**6.** Defendants also contend that a 1982 letter from the United States Dept. of Education Office of Civil Rights ("OCR") to MHSAA establishes that MHSAA is not a recipient of federal funds, and contend further that this determination should be accorded the deference described in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Court, first, questions the deference due the letter as a formal object. It is better described as a note than a reasoned policy interpretation. It is not a regulation, an agency adjudication, or the sort of opinion letter to which courts give deference. *See Pension Benefit Guaranty Corp. v. LTV Corp.,* 496 U.S. 633, 646, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) (*Chevron* deference appropriate for opinion letters). This question need not be resolved, however, given the letter's contents. The letter, written in 1982, contains the following paragraph:

> Based on the information currently available to OCR, we have determined that the MHSAA does not receive Federal financial assistance. We are therefore closing the complaint against the MHSAA at this time. It is possible that the complaint could be reopened if other information regarding recipient status were received by OCR.

The letter, by its terms, is not an agency interpretation that MHSAA is not now a recipient of federal financial assistance. It is a highly contingent, qualified statement, establishing the OCR's opinion at the time. Indeed, by its terms, the letter disowns deference, inviting "other information" which might change its contingent conclusion.

**7.** In all future motions and briefs, the parties are requested to provide: (1) pinpoint citations to legal authority, where possible; (2) subsequent history of cases, excluding denials of certiorari; and (3) when citing an unpublished case, notice of the case's publication status.

statute prohibits discrimination *under* any education program or activity receiving federal financial assistance, rather than *by* such a program or activity, individual liability is contemplated by the statute. The Court concludes, however, that individual liability is not created solely by imperfectly exclusive statutory language.

■ The great majority of courts addressing the issue have concluded that there is no individual liability under Title IX. *See Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881 (1st Cir.1988); *Smith v. Metro. Sch. Dist.,* 128 F.3d 1014 (7th Cir.1997). *See also Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 730 (6th Cir.1996) (Nelson, J., concurring) ("I do not believe that Title IX can appropriately be read as subjecting anyone other than educational institutions to liability for violation of its terms."). *But see Mennone v. Gordon,* 889 F.Supp. 53 (D.Conn.1995) (finding individual liability). These courts have concluded that an action may be brought against only the "education program[s] and activit[ies]" identified by the statute, and not by individuals, who cannot be federal grant recipients. *See Smith,* 128 F.3d at 1019. In light of the near unanimity of courts which have addressed the issue, the Court finds that individual liability against the Defendants is not available under Title IX.

■ It does appear, however, that officials who exercise administrative control over a grant recipient may be held liable in their official capacities. *See Smith,* 128 F.3d at 1020. The question here, then, is whether the individual Defendants exercise administrative control over MHSAA. Defendants submit no evidence with their summary judgment motion which goes to the issue of administrative control. At least, a genuine

issue of material fact remains as to that control.[8]

## IV. EQUAL PROTECTION

■ Defendants first argue that Plaintiffs' equal protection allegations are conclusory, and therefore cannot survive a motion to dismiss. While it is true that conclusory allegations fail to state a claim, *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir.1996), Plaintiffs' allegations do not appear as conclusory to the Court as they do to Defendants. A case cited by Defendants illustrates this. In *Yusuf v. Vassar College,* 35 F.3d 709 (2nd Cir.1994), the Second Circuit noted that one manner of allegation sufficient to support a claim of intentional discrimination (in the context of Title IX) was of "patterns of decision-making that ... tend to show the influence of gender." *Id.* at 715. Plaintiffs' allegations are of this sort, and are therefore sufficient.[9]

Regarding the status of MHSAA as a state actor,[10] the Court will again defer ruling until the Plaintiffs have had an opportunity to conduct discovery. This is a fact specific inquiry which the Court cannot make on the facts so far presented. In the context of a Rule 12(b)(6) motion, this Court cannot now determine that there is no set of facts Plaintiffs could prove consistent with the allegation.[11]

■ The Defendants' remaining equal protection analysis is singularly misguided. The existence of a "fundamental right" is relevant to equal protection analysis only in the absence of a "suspect classification." *See San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 28–29, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (engaging in fundamental rights analysis only after determining that no suspect classification was at issue). Gender is a

---

8. Of course, it appears likely that the MHSAA Representative Council would have such control.

9. This is true of the Amended Complaint generally. Accordingly, none of the assertions of "vagueness" will result in dismissal. As well, Defendants' Motion for a More Definite Statement will be denied. These motions are disfavored, and their purpose is better served by discovery. *See Erickson v. Hunter,* 932 F.Supp. 1380 (M.D.Fla.1996).

10. An issue not raised by Defendants until addressed in Plaintiffs' brief.

11. Plaintiffs request further discovery before responding to the Defendants' equal protection motion. However, this motion is made under Rule 12(b)(6), not Rule 56(c). Since dismissal is inappropriate, the claims will naturally proceed to discovery.

suspect classification. When such a classification is at issue, the form of discrimination alleged is of little relevance. Here Plaintiffs allege that a state actor has invidiously discriminated on the basis of gender by treating female student athletes differently from male student athletes without sufficient justification. This is the very nature of a gender-based equal protection claim. Plaintiffs have stated an equal protection claim sufficient to defeat a 12(b)(6) challenge.

## V. MICHIGAN STATE LAW CLAIMS

The individual Defendants also move to dismiss Plaintiffs' state law claims, brought pursuant to Mich.Comp.Laws §§ 37.2302 and 37.2402.[12] First, the Court determines that the Amended Complaint is sufficiently particular with regard to the state claims to survive the motion to dismiss.

▪ Regarding the remainder of the motion, Defendants contend that, under § 37.2302, they are not a "place of public accommodation," or "public service," as required before the statute's anti-discrimination provisions can take effect. They so contend because "MHSAA is a private, non-profit corporation and because it is the school districts themselves which regulate and control interscholastic sports within their districts." For dismissal to be appropriate, Defendants must show that there is no set of facts under which relief could be granted. Here, in order to achieve dismissal, Defendants must show that they are not a "place of public accommodation" or "public service" as a matter of law. The Defendants' assertions

do not. The law of public accommodations is very broad,[13] and it is not easy for an entity to evade designation as such an accommodation. See, e.g., Rogers v. Int'l Ass'n of Lions Clubs, 636 F.Supp. 1476, 1479–80 (E.D.Mich. 1986) (holding, under § 37.2301, that a Lion's Club chapter was a public accommodation, based primarily on public accessibility). Moreover, a "public service" includes "a tax exempt private agency established to provide a service to the public," Mich.Comp.Laws § 37.2301(b), a description which may describe MHSAA. Without determining, absent further evidence and argument, that MHSAA *is* a public accommodation or public service, the Court determines that Defendants have not established that it is not, as a matter of law.[14]

▪ Regarding the individual Defendants, potential liability under § 37.2302 appears facially possible. The statute does not prohibit discrimination only by places of public accommodation or public services themselves, but by "persons" in the context of places of public accommodation and public services.

▪ Regarding § 37.2402, Defendants contend MHSAA and individual Defendants are not "educational institutions" subject to the statute's strictures. However, as noted by Plaintiffs, the definition of educational institution "includes an agent of an educational institution." Mich.Comp.Laws. § 37.2401. Whether MHSAA and the individ-

---

**12.** MHSAA itself does not so move, choosing, instead, to depend on the dismissal of the state law claims as supplemental claims after the hoped for dismissal of the claims over which this Court has original jurisdiction. Individual Defendants appear to move on behalf of MHSAA, however, arguing that MHSAA itself is not potentially liable. Strangely, Plaintiffs treat this part of the individual Defendants' motion as though it were asserted only by MHSAA, rather than the individual Defendants, and address only whether MHSAA is potentially liable under these acts, rather than whether the individual Defendants can be held liable.

**13.** Though not necessarily as broad as the parties arguments might lead one to believe. The cases

relied upon by the parties, Sandison v. MHSAA, 863 F.Supp. 483 (E.D.Mich.1994), rev'd 64 F.3d 1026 (6th Cir.1995), and McPherson v. MHSAA, 119 F.3d 453 (6th Cir.1997) (en banc), all address the definition of "public accommodation" as contained in the Americans with Disabilities Act. While interpretations of the ADA may be instructive here, they do not appear binding. The Michigan law, it should go without saying, may be subject to very different interpretations.

**14.** Plaintiffs request further discovery before responding to the Defendants' state law motion. However, this motion is made under Rule 12(b)(6), not Rule 56(c). Since dismissal is inappropriate, the claims will naturally proceed to discovery.

ual Defendants are agents of Michigan schools is, in part, a question of fact which remains to be resolved.[15]