DOE v YOUNG MARINES OF THE MARINE CORPS LEAGUE

Docket No. 275579. Submitted December 11, 2007, at Lansing. Decided
December 18, 2007, at 9:05 a.m.

Jane A. Doe, by her next friend, Jane B. Doe, brought an action in the
Grand Traverse Circuit Court against the Young Marines of the
Marine Corps League, a private, nonprofit corporation run by
volunteers whose purpose is to promote the mental, moral, and
physical development of its members, who are eight years old
through high school; Wade Boyd, the commanding officer of the
Traverse City Young Marines; and Joshua A. Smith, alleging a
denial of access to a place of public accommodation in violation of
the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, retaliation,
intentional infliction of emotional distress, and negligent supervi-
sion. The plaintiff alleged that she resigned from the Young
Marines as a result of the perceived failure of the Young Marines
to address the inappropriate touching of her by Smith, a fellow
Young Marine, during Young Marine activities. The court, Philip
E. Rodgers, Jr., J., granted the plaintiff's motion to strike affirma-
tive defenses asserted by the Young Marines and Boyd (hereafter
defendants) and denied, in part, the defendants' motion for
summary disposition. The defendants appealed from those orders
by leave granted.

The Court of Appeals *held*:

1. The public accommodations provisions of the CRA do not
apply to the Young Marines. The Young Marines is a private,
tax-exempt organization that does not come within either of the
two exceptions that would bring a private club within the coverage
of the act. Specifically, the Young Marines does not make its
services available to anyone other than its members and it is not a
private club otherwise defined as a place of public accommodation
in the CRA, since it is not a country club, a golf club, a boating or
yachting club, a sports or athletic club, or a dining club. The trial
court erred in denying summary disposition in favor of the
defendants on the CRA claim.

2. The claim that the defendants retaliated against the plain-
tiff for opposing a violation of the CRA should have been dismissed
because there was no violation of the CRA.

3. Generally, there is no duty to protect a person who is endangered by a third person's conduct unless there is a special relationship either between the defendant and the victim or the defendant and the third party who caused the injury. A special relationship must be sufficiently strong to require a defendant to take action to benefit the injured party. A special relationship may exist where the injured party entrusted himself or herself to the protection and control of the defendant and, in doing so, lost the ability to protect himself or herself. The plaintiff did not allege that a special relationship existed to the extent that she surrendered herself to the control of the defendants and lost the ability to protect herself. The defendants were entitled to summary disposition of the claim of negligent supervision. The order denying summary disposition must be reversed and the matter must be remanded for the entry of summary disposition in favor of the Young Marines and Boyd.

Reversed and remanded.

*Parsons Ringsmuth PLC* (by *Grant W. Parsons*) for Jane A. Doe.

*Kopka, Pinkus, Dolin & Eads, P.L.C.* (by *John T. Eads, III,* and *Darlene M. Germaine*), and *David A. Bieganowski,* for Young Marines of the Marine Corps League and Wade Boyd.

Before: DONOFRIO, P.J., and SAWYER and CAVANAGH, JJ.

PER CURIAM. Defendants Young Marines of the Marine Corps League and Wade Boyd (hereafter defendants) appeal by leave granted from orders of the circuit court granting plaintiff's motion to strike affirmative defenses and denying in part defendants' motion for summary disposition. We reverse.

Defendant Young Marines describes itself as "a private, non-profit corporation run by volunteers whose purpose is to promote the mental, moral and physical development of its members, who are ages eight through high school." Defendant Boyd is the command-

ing officer of the Traverse City Young Marines. Plaintiff and defendant Joshua A. Smith were individual members of the Traverse City Young Marines at the time the incidents that form the basis of this action occurred. Specifically, plaintiff was a member from April 2003 until December 2005. Her complaint alleges that on two occasions in 2005, defendant Smith inappropriately touched her during Young Marines activities. Plaintiff further alleges that the response by the Young Marines, and Boyd in particular, gave rise to her decision to quit the group.

The first incident occurred in November 2005 at the Marine Corps birthday ball, where plaintiff and Smith were participating as members of the color guard. While waiting with a group of others to perform their color-guard duty, they were discussing the ribbons on their uniforms, which were located above the uniform's breast pocket. Smith pointed to various ribbons and asked what they were for. At one point, according to plaintiff, he placed two fingers on her breast while touching a ribbon. Plaintiff pushed his hand way and told him not to touch her. Plaintiff did nothing further regarding the incident at the time.

The second incident occurred on December 1, 2005, at a regular Thursday evening meeting at the Army Reserve Center. Smith was participating in a relay race in the gym and plaintiff was standing nearby observing. Smith ran across the line, slid into plaintiff, and placed his hand on her right breast. Plaintiff reported this incident to one of the adult supervisors, Linda Deeren, who reported it to others. Apparently because Boyd was not present at the time, no action was immediately taken. Plaintiff resumed her activities for the rest of the meeting. Deeren drove plaintiff home that evening and spoke with plaintiff's mother regarding the incident.

After Deeren left, plaintiff and her mother discussed the incident and decided to contact the police.

The Young Marines commenced an investigation into the incident by a board of inquiry. Plaintiff made a statement to the board. Plaintiff states that at a meeting on December 15 she and her mother asked Boyd what was going to happen. Boyd responded, "Nothing because of what happened today," referencing Smith's being criminally charged in the incident. Plaintiff's mother told Boyd that she understood that Smith had admitted that he had intentionally, rather than accidentally, touched plaintiff. According to plaintiff, after that meeting, Deeren told them that the board was going to rule the incident an accident. A week later, plaintiff submitted a letter of resignation to Boyd, stating that she was leaving the group "because of the lack of support I have received concerning the recent incident with Josh Smith." Ultimately, Smith pleaded guilty of a misdemeanor in the criminal case in February 2006, and was sentenced to two years' probation, with 45 days in jail. One of the conditions of probation was for Smith not to participate in the Young Marines program.

Plaintiff commenced the instant action in April 2006, alleging a denial of access to a place of public accommodation in violation of the Michigan Civil Rights Act, MCL 37.2101 *et seq.*, retaliation, intentional infliction of emotional distress, and negligent supervision. Defendants answered, pleading numerous affirmative defenses. Plaintiff moved to strike the affirmative defenses for failure to plead facts in support of them. The trial court granted the motion. Defendants then moved for summary disposition, which the trial court, in part, denied.

On appeal, defendants argue that the trial court erred both in granting plaintiff's motion to strike the

affirmative defenses and in denying defendants' motion for summary disposition. We turn first to the question whether the trial court erred in denying summary disposition, beginning with the claim of a denial of access to a place of public accommodation.

MCL 37.2302 provides, in pertinent part, as follows:

Except where permitted by law, a person shall not:

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

MCL 37.2301 defines "place of public accommodation" and "public service" as follows:

(a) "Place of public accommodation" means a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. Place of public accommodation also includes the facilities of the following private clubs:

(*i*) A country club or golf club.

(*ii*) A boating or yachting club.

(*iii*) A sports or athletic club.

(*iv*) A dining club, except a dining club that in good faith limits its membership to the members of a particular religion for the purpose of furthering the teachings or principles of that religion and not for the purpose of excluding individuals of a particular gender, race, or color.

(b) "Public service" means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that public

service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment.

Also relevant is MCL 37.2303, which specifically excludes coverage of private clubs by the Civil Rights Act:

This article shall not apply to a private club, or other establishment not in fact open to the public, except to the extent that the goods, services, facilities, privileges, advantages, or accommodations of the private club or establishment are made available to the customers or patrons of another establishment that is a place of public accommodation or is licensed by the state under Act No. 8 of the Public Acts of the Extra Session of 1933, being sections 436.1 through 436.58 of the Michigan Compiled Laws. This section shall not apply to a private club that is otherwise defined as a place of public accommodation in this article.

It is undisputed that the Young Marines is a private, tax-exempt organization. Therefore, under the terms of MCL 37.2303, the public accommodations provisions of the Civil Rights Act do not apply to the Young Marines unless one of the two exceptions within the section applies. The first exception applies where the private club's "goods, services, facilities, privileges, advantages, or accommodations" are made available to customers or patrons of an establishment that is a place of public accommodation or is licensed under MCL 436.1 *et seq.* There is no indication that the Young Marines makes its services available to anyone other than its members.[1] The second exception, for private clubs otherwise defined as a place of public accommodation, is likewise inapplicable because the Young Marines is not a country

---

[1] The statute referred to in § 303, MCL 436.1 *et seq.*, is also inapplicable because that act has been repealed. Furthermore, it was formerly the liquor control act and, therefore, presumably would not have had application to an organization made up of young persons.

club, golf club, boating or yachting club, sports or athletic club, or a dining club. MCL 37.2301(a).

Where statutory language is clear and unambiguous, judicial construction is neither permitted nor required. *Diamond v Witherspoon*, 265 Mich App 673, 684; 696 NW2d 770 (2005). And we are to read nothing into an unambiguous statute that is not within the Legislature's manifest intent as expressed by the words of the statute itself. *Id.* at 685. The Legislature has clearly and unambiguously expressed that private clubs do not come within the public accommodations provisions of the Civil Rights Act unless the private club falls within one of the clearly expressed exceptions. The Young Marines does not fall within any of those exceptions. Accordingly, the public accommodations provisions do not apply here.

Moreover, the cases relied on by plaintiff are inapplicable to this case. She cites the recent Michigan Supreme Court decision in *Haynes v Neshewat*, 477 Mich 29, 38; 729 NW2d 488 (2007), for the proposition that the Civil Rights Act protects individuals, not the public, and that a place's services and so forth need not be offered to the public in order for it to be a place of public accommodation. *Haynes* does not, however, define what is a place of public accommodation. Rather, it holds that discrimination in a place of public accommodation against an individual is unlawful without regard to whether the goods, services, facilities, privileges, advantages, or accommodations are offered to the public. The decision offers no guidance on whether a private organization fits within the statutory definition of "place of public accommodation."

Plaintiff also relies on two federal decisions interpreting the Michigan Civil Rights Act, *Communities for Equity v Michigan High School Athletic Ass'n*, 459 F3d

676 (CA 6, 2006), and *Rogers v Int'l Ass'n of Lions Clubs*, 636 F Supp 1476 (ED Mich, 1986). In *Communities for Equity, supra* at 697, the United States Court of Appeals for the Sixth Circuit relied heavily on *Rogers* in concluding that the Michigan High School Athletic Association was a place of public accommodation:

> MHSAA argues that the district court erred in finding that MHSAA serves as a "public accommodation" and provides a "public service." The case most directly on point on these issues is *Rogers v. International Association of Lions Clubs*, 636 F. Supp. 1476, 1479 (E.D. Mich. 1986), where the district court found that a Lions Club qualified as a place of public accommodation providing public services. The Lions Club qualified as "a place of public accommodation" because its meetings are held in a public place (a Howard Johnson's restaurant), the meetings are open to the public, and the volunteer efforts of the Lions Club's members are made available to the public. *Id*. As the district court noted, MHSAA sponsors championship athletic tournament events that are held in public places and open to members of the general public. *Cmtys. for Equity*, 178 F. Supp. 2d [805] at 859 [WD Mich, 2001]. Competitions are also held in public places for which MHSAA facilitates the scheduling. The district court in *Rogers* further considered whether the Lions Club provided a "public service." 636 F. Supp. at 1479. After noting that the Club is a tax-exempt, nonprofit private agency whose stated purpose is to provide volunteer public service through its members, the court concluded that the Club provides a public service. *Id*. MHSAA is likewise a tax-exempt entity that provides a service to the public—"the organization of interscholastic athletics in the state's schools." *Cmtys. for Equity*, 178 F. Supp. 2d at 859. The district court therefore determined that MHSAA qualifies as providing a "public service" under Michigan law.

Turning to the *Rogers* decision, *Rogers* concluded that a Lions Club was a place of public accommodation under

the Michigan Civil Rights Act and did not fall within the exemption for private clubs under MCL 37.2303:

> This statutory provision has not been interpreted by the Michigan courts. However, the United States Supreme Court has given some guidance as to what factors should be considered in deciding when a club is private. *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984), citing *Nesmith v. Young Men's Christian Ass'n*, 397 F.2d 96 (4th Cir. 1968), and *National Organization for Women v. Little League Baseball, Inc.*, 127 N.J. Super. 522, 318 A.2d 33, *aff'd mem.*, 67 N.J. 320, 338 A.2d 198 (1974). These factors include the organization's size, selectivity, public services offered, and use of public facilities. [*Rogers, supra* at 1479.]

We find little guidance in these federal decisions. We are not bound to follow a federal court's interpretation of state law and we are not persuaded that those decisions correctly interpret Michigan law. The fundamental flaw of *Rogers* is that it reads *Roberts* as listing factors to be considered when determining whether a club is private. *Roberts* did no such thing.

In *Roberts*, the Minnesota Department of Human Rights had determined that the Jaycees were a place of public accommodation under the Minnesota Human Rights Act and that the Jaycees' policy of preventing its local chapters from accepting women as full members of the organization violated the state law. *Roberts, supra* at 615-616. The Jaycees sought relief in the federal courts, arguing that in applying the state statute to the Jaycees, Minnesota violated the Jaycees' federal constitutional rights to freedom of association under the First Amendment and that the statute was unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment. *Id.* at 616-617.

The factors discussed by the Supreme Court were considered in the context of determining whether the

organization's association rights were affected, not whether the organization was a private club, as *Rogers* suggests:

> We note only that factors that may be relevant include size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent. In this case, however, several features of the Jaycees clearly place the organization outside of the category of relationships worthy of this kind of constitutional protection. [*Id.* at 620.]

The court did later in its opinion turn to consideration of the factors of "the organization's size, selectivity, commercial nature, and use of public facilities—typically employed in determining the applicability of state and federal antidiscrimination statutes to the membership policies of assertedly private clubs." *Id.* at 629. But it did so in the context of considering whether the Minnesota statute was unconstitutionally vague and overbroad. In essence, the court concluded that the statute, as interpreted by the Minnesota Supreme Court with reference to those criteria, was not unconstitutionally vague.

But, contrary to the assertion in *Rogers*, none of these factors tells us anything about whether the Michigan Civil Rights Act defines a place of public accommodation to include private organizations such as the Young Marines, or, for that matter, the Lions Club or the Michigan High School Athletic Association. Rather, *Roberts* merely addresses the question whether, in light of those criteria, a state may constitutionally apply a public accommodations statute to an otherwise private organization. In short, *Roberts, Rogers,* and *Communities for Equity* at most tell us whether the Michigan Civil Rights Act could be applied to the Young Marines.

It tells us nothing about whether the Michigan Civil Rights Act does apply to the Young Marines.

And for the reasons stated above, we conclude that the Young Marines is not a place of public accommodation under the Michigan Civil Rights Act and, therefore, that article 3 of the Civil Rights Act does not apply. Accordingly, the trial court erred in denying summary disposition to defendants on the Civil Rights Act claims.

Because there was no violation of the Civil Rights Act, plaintiff cannot make a claim under MCL 37.2701 that defendants retaliated against her for opposing a violation of the act. Therefore, the trial court should have dismissed this claim as well.

This leaves plaintiff's claim for negligent supervision. This issue is controlled by the Supreme Court's decision in *Murdock v Higgins*, 454 Mich 46, 54; 559 NW2d 639 (1997), in which the Court stated:

> Generally, an individual has no duty to protect another who is endangered by a third person's conduct. Where there is a duty to protect an individual from a harm by a third person, that duty to exercise reasonable care arises from a "special relationship" either between the defendant and the victim, or the defendant and the third party who caused the injury. *Marcelletti v Bathani*, 198 Mich App 655, 664; 500 NW2d 124 (1993). Such a special relationship must be sufficiently strong to require a defendant to take action to benefit the injured party. *Samson v Saginaw Professional Bldg, Inc*, 393 Mich 393, 406; 224 NW2d 843 (1975).
>
> In this case, a special relationship would exist if the plaintiff had entrusted himself to the protection and control of defendant Higgins and, in so doing, lost the ability to protect himself. *Dykema v Gus Macker*, 196 Mich App 6, 9; 492 NW2d 472 (1992), citing *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988).

Plaintiff sets forth no argument in support of a conclusion that a special relationship existed to the extent that she surrendered herself to the control of defendants and lost the ability to protect herself. Accordingly, defendants were entitled to summary disposition on this claim as well.

Because we conclude that the trial court should have granted defendants' motion for summary disposition, we need not determine whether the trial court erred in striking defendants' affirmative defenses. On remand, the trial court shall enter an order of summary disposition in favor of defendants Young Marines and Boyd.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendants may tax costs.